October 3, 2025

Jarrett B. Perlow
Clerk of Court
US Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

    Re: Reply to your October 1, 2025 "Notice of Non-Compliance"
Correspondence, Document #51 in the docket for Case 25-1616

Dear Clerk Perlow,

Thank you for requesting additional corrections and missing
information. Again, please accept my sincere apologies.

Please accept the enclosed Corrected amicus brief for filing in Vicor
Corporation v. USITC (25-1616). It incorporates the two changes you've
requested: (1) Compliance with Fed. R. App. P. 29(a)(4)(E) concerning a
statement regarding authorship and funding (see p. 6 of the Corrected
amicus brief); and (2) The word "Corrected" is now included in the
document.

Thank you again for your guidance and continued patience.

Most Sincerely,

Suzanne Harrison
24 19th Avenue
San Francisco, CA 94121
415-509-4469
suzanne@percipience-ip.com

**RECEIVED**

OCT 0 7 2025

United States Court of Appeals
For the Federal Circuit

*Corrected*

No. 25-1616

*In the*
United States Court of Appeals
*for the*
Federal Circuit
****
VICOR CORPORATION,

*Appellant,*

— v. —

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

FII USA INC., INGRASYS TECHNOLOGY INC.,

*Intervenors.*

*On Appeal from the United States International
Trade Commission in No. 337-TA-1370*

**SUZANNE HARRISON AND DR. BOWMAN HEIDEN,
UNREPRESENTED PARTIES AS *AMICUS CURIAE*, IN
SUPPORT OF REVERSAL AND IN SUPPORT OF NO PARTY**

Dr. Bowman Heiden
1600 Shattuck Avenue #114
Berkeley, CA 94709
Telephone: 650-931-5501
boheiden@gmail.com

Suzanne Harrison
24 19th Avenue
San Francisco, CA 94121
Telephone: 415-509-4469
suzanne@percipience-ip.com

*Unrepresented Parties as Amicus Curiae*

August 25, 2025

*Corrected*

## CERTIFICATE OF INTEREST

Case No.:  25-1616

Caption:  *Vicor Corporation v. International Trade Commission*

Filing Party/Entity: Suzanne Harrison and Dr. Bowman Heiden

1.  Represented Entities (Fed. Cir. R. 47.4(a)(1)):

Suzanne Harrison and Dr. Bowman Heiden as Unrepresented Parties

2.  Real Party in Interest (Fed. Cir. R. 47.4(a)(2)):

None/Not Applicable

3.  Parent Corporations and Stockholders: (Fed. Cir. R. 47(a)(3)):

   None/Not Applicable

4.  Legal Representatives (Fed. Cir. R. 47.4(a)(4)):

   None/Not Applicable

5.  Related Cases. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   Not Applicable (amicus)

6.  Organizational Victims and Bankruptcy Cases (Fed. Cir. R. 47.4(a)(6)).

   None/Not Applicable

I certify the above information is accurate and complete to the best of my knowledge.

Date: August 25, 2025

*[signature]*

Dr. Bowman Heiden

*Unrepresented Party as Amicus Curiae*

*Corrected*

# TABLE OF CONTENTS

Certificate of Interest..................................................................2

Table of Contents......................................................................3

Table of Authorities..................................................................4

Identity and Interest of *Amicus Curiae* and Source of Authority to File Brief.......................................................................................6

Summary of Argument................................................................9

Argument....................................................................................9

   I.     Innovation Warfare: A Threat to Economic and National Security..........................................................................9

   II.    Economic and national security implications of this case on American technology firms..............................................12

   III.   Preview of DoD's March 2026 Report on Cognitive Warfare and Narrative Intelligence..............................................15

Conclusion...............................................................................17

Certificate of Compliance – Brief..............................................18

Certificate of Service – Brief.....................................................19

*Corrected*

# TABLE OF AUTHORITIES

**Cases**

Stanford v. Roche, 563 U.S. 776 (2011)...........................................14

**Statutes**

35 U.S.C. §§ 101–103................................................................14

**Legislation**

S. Rept. 119-39 - National Defense Authorization Act for Fiscal Year 2026, Sec. 1084—Report on defense workforce integration, Narrative intelligence and cognitive warfare (pp. 200-201)...............................15

**Other Authorities**

Atlantic Council, How Beijing's Newest Global Initiatives Seek to Remake the World Order (June 2023)..............................................12

Jeanne Suchodolski, Suzanne Harrison & Bowman Heiden, Innovation Warfare, 22 N.C. J.L. & Tech. 175 (2020)....................................9, 11

Joel P. Trachtman, Integrating Lawfare and Warfare, 39 Bos. Coll. Int'l & Comp. L. Rev. 267 (2016).........................................................20

Jonathan Ward, China's Vision of Victory 104 (Atlas Publishing and Media Company, 2019).............................................................10

Maj. Gen. Charles J. Dunlap, Jr., Lawfare 101: A Primer, 97 Mil. Rev. 48 (May/June 2017).................................................................10

Mark Cohen, Statement Before the Senate Committee on the Judiciary, Subcommittee on Intellectual Property, Hearing on "Foreign Threats to

4

*Corrected*

American Innovation and Economic Leadership" (May 14, 2025)…........10

Michael Brown & Pavneet Singh, China's Technology Transfer
Strategy: How Chinese Investments in Emerging Technologies Enable
Access to the Crown Jewels of U.S. Innovation, Defense Innovation Unit
Experimental (2008)…………………………………………………...10, 15

RAND Corporation, China and the International Order (2018)………..12

Robert Blackwell and Jennifer Harris, War by Other Means:
Geoeconomics and Statecraft 11 (Cambridge, MA: Harvard University
Press, 2016)…………………………………………………………………..11

Sean O'Conner, How Chinese Companies Facilitate Technology
Transfer from the United States (2019)……………………………......10

WHITE HOUSE OFF. OF TRADE & MFG. POL'Y, EXEC. OFF. OF
THE PRESIDENT, How China's Economic Aggression Threatens the
Technologies and Intellectual Property of the United States and the
World (2008)…………………………………………………………….…10

White House, National Security Strategy at 2,
https://www.whitehouse.gov/wp content/uploads/2017/12/NSS-Final-12-
18-2017-0905.pdf. ………………………………………………………..12

*Corrected*

## IDENTITY AND INTEREST OF *AMICUS CURIAE* AND SOURCE OF AUTHORITY TO FILE BRIEF[1]

Suzanne Harrison and Dr. Bowman Heiden submit this brief as amici curiae to provide the Court with a neutral, economics-informed perspective on the licensing and innovation issues raised by this appeal.

Ms. Harrison is a recognized expert in intellectual property ("IP") strategy and innovation management. She is the Founder and Principal of Percipience LLC, a board-level advisory firm focused on IP strategy, valuation, and risk mitigation. In her career, Ms. Harrison has led initiatives to increase transparency in patent licensing markets (including as CEO of a pioneering online patent transaction platform)

---

[1] No party's counsel authored this brief in whole or in part, and no person other than amicus contributed money that was intended to fund the preparation or submission of the brief. See Fed. R. App. P. 29(a)(4)(E). Appellant, Vicor Corporation, and Appellee, USITC, have consented to this request to file a brief and to file late. Intervenors FII USA Inc., and INGRASYS TECHNOLOGY Inc., did not consent and will decide whether to file a response after seeing this brief. A motion for leave to file the amicus brief was entered into the docket as document 33 along with this brief on August 27, 2025. Intervenors have not yet objected. This "Corrected" version of the amicus brief modifies the statement of interest of the amicus curiae as requested by the Clerk on October 1, 2025, and corrects the font and size of footnotes, and updates the pagination.

and has co-authored three books on intellectual asset management, detailing best practices used by technology companies to maximize the value of their IP portfolios. She has also Chaired the United States Patent and Trademark Office's Public Advisory Committee for patents, reflecting her engagement with federal IP policy.

Dr. Heiden is an academic and policy expert in innovation economics and intellectual property rights. He serves as Co-Director of the Center for Intellectual Property at the University of Gothenburg, a joint academia-industry platform focused on transforming knowledge into economic value. He is also Executive Director of the Tusher Initiative for Technology Leadership at the University of California, Berkeley, and co-chairs the Technology, Innovation, and Intellectual Property program at NYU Law's Classical Liberal Institute. Dr. Heiden has advised international policymaking bodies on IP and licensing, including as a member of the European Commission's expert group on standard-essential patents. With graduate degrees in engineering, technology management, and economics, his research lies at the intersection of law and economics in knowledge-intensive industries. He

*Corrected*

has published extensively on patent licensing, competition policy, and innovation strategy.

Ms. Harrison and Dr. Heiden have also jointly studied the link between innovation policy and national economic security. Notably, they co-authored a law journal article introducing the concept of "Innovation Warfare," an emerging doctrine describing how state actors leverage legal and economic means to acquire technology and erode rivals' competitive edge. Through their academic and professional work, both amici have devoted attention to the health of licensing markets and the safeguarding of technological innovation. They write in their personal capacities and aim to demonstrate that the Vicor v. USTIC case before the Federal Circuit is far more than a routine contract dispute under the Uniform Commercial Code. Rather, it exemplifies a deliberate tactic in China's state-orchestrated "innovation warfare" strategy, which targets American technological superiority through coercive mechanisms like forced technology transfer embedded in procurement contracts.

*Corrected*

## SUMMARY OF ARGUMENT

This brief provides: (I) an overview of innovation warfare and its

deployment by China, bolstered by detailed tactics and doctrines from

our 2020 paper; (II) the broader economic and national security

implications for American technology firms; and (III) recommendations

for the Department of Defense's forthcoming March 2026 report on

cognitive warfare and narrative intelligence, as mandated by the FY26

National Defense Authorization Act (NDAA), linking IP coercion to

these emerging domains.

## ARGUMENT

### I.    Innovation Warfare: A Threat to Economic and National Security

Innovation warfare refers to a competitive strategy where a nation-

state, particularly China, employs state-driven policies and tactics to

acquire intellectual property, technology, and innovation through both

legal and illegal means.[2] This strategy aims to undermine the

technological superiority of rival nations, with a primary focus on the

United States, to enhance its own economic, geopolitical, and military

---

[2] Jeanne Suchodolski, Suzanne Harrison & Bowman Heiden, *Innovation Warfare*, 22 N.C. J.L. & Tech. 175 (2020).

*Corrected*

power. Central to this strategy is China's use of economic instruments, such as foreign direct investment, venture capital, talent acquisition, and forced technology transfer.[3] This approach also includes manipulating intellectual property laws, devaluing foreign patents, and exploiting international standards-setting bodies to gain control over global technological frameworks.[4] Figure 1 below provides an overview of the different tactics employed.

---

[3] WHITE HOUSE OFF. OF TRADE & MFG. POL'Y, EXEC. OFF. OF THE PRESIDENT, *How China's Economic Aggression Threatens the Technologies and Intellectual Property of the United States and the World* (2008). MICHAEL BROWN & PAVNEET SINGH, DEF. INNOVATION UNIT EXPERIMENTAL (DIUX), *China's Technology Transfer Strategy: How Chinese Investments in Emerging Technologies Enable a Strategic Competitor to Access the Crown Jewels of U.S. Innovation* 16 (2008). SEAN O'CONNER, *How Chinese Companies Facilitate Technology Transfer from the United States* (2019).
[4] *See* Mark Cohen, *Statement Before the Senate Committee on the Judiciary, Subcommittee on Intellectual Property, Hearing on "Foreign Threats to American Innovation and Economic Leadership"* 17–18 (May 14, 2025). *See also*, Joel P. Trachtman, Integrating Lawfare and Warfare, 39 *Bos. Coll. Int'l & Comp. L. Rev.* 267 (2016) and Maj. Gen. Charles J. Dunlap, Jr., *Lawfare 101: A Primer*, 97 Mil. Rev. 48 (May/June 2017).

*Corrected*



Figure 1: Chinese tactics for appropriating U.S. technology and intellectual property[5]

China's pursuit of innovation warfare aligns with its broader

geopolitical goals, which include challenging the U.S. and reasserting

its dominance on the global stage.[6] China's leadership rejects the

current rules-based international order and instead aims to reshape the

---

[5] *See* Suchodolski, et al., *supra* note 2, at 199.

[6] Jonathan Ward, *China's Vision of Victory* 104 (Atlas Publishing and Media Company, 2019). Robert Blackwell and Jennifer Harris, *War by Other Means: Geoeconomics and Statecraft* 11 (Cambridge, MA: Harvard University Press, 2016).

*Corrected*

global economic system to better serve its national interests.[7] As part of its "rejuvenation" agenda, China seeks to achieve technological and economic supremacy while bypassing conventional military conflict. Through "innovation warfare," China not only threatens U.S. technological leadership but also its values of privacy, human dignity, and freedom, which are foundational to the liberal world order.

In essence, innovation warfare is a form of economic aggression, in which China exploits innovation as both an economic and geopolitical weapon. This form of warfare challenges the norms of fair competition and jeopardizes the intellectual property systems that are essential for global economic stability. The U.S. is increasingly recognizing that it must defend itself against these tactics, as they represent a profound threat to its economic prosperity, security, and way of life.[8]

## II.  Economic and national security implications of this case on American technology firms

---

[7] RAND Corporation, *China and the International Order* (2018); Atlantic Council, *How Beijing's Newest Global Initiatives Seek to Remake the World Order* (June 2023).

[8] White House, National Security Strategy at 2, https://www.whitehouse.gov/wp content/uploads/2017/12/NSS-Final-12-18-2017-0905.pdf.

*Corrected*

If the Federal Circuit affirms the International Trade Commission's ruling, it would create significant systemic problems and raise serious concerns of unconscionability.

First, such a decision would effectively legitimize forced technology transfer by Chinese manufacturers. U.S. suppliers engaged in contract manufacturing with Chinese firms could be compelled to relinquish intellectual property ("IP") without fair consideration—an arrangement that could never be negotiated at arm's length. This practice would materially weaken the value of U.S. companies and their IP portfolios, allowing Chinese actors to weaponize unconscionable contract provisions as a mechanism for acquiring critical technology. The technology at issue in this case, while not itself subject to CFIUS restrictions, is part of Vicor's broader portfolio, some of which involves emerging and critical technologies subject to national security oversight. Affirmation of the ITC's decision could, therefore, create a pathway for foreign access to restricted U.S. technologies with far-reaching national security implications.

13

*Corrected*

Second, upholding the ruling would signal that the inclusion of forced technology transfer clauses in contracts—even those that are clearly unacceptable to U.S. suppliers—can be rewarded opportunistically, incentivizing continued use of such provisions in the hope of opportunistic IP acquisition.

Third, standard commercial practices would be disrupted: U.S. suppliers often respond to purchase orders by proposing alternate IP terms to mitigate unfair clauses. If the ITC's judgment is affirmed, suppliers will be compelled to route all communications through legal departments, creating inefficiencies and removing decision-making authority from operational staff. Finally, the fundamental divergence in IP regimes between the U.S. and China exacerbates these risks. In the United States, patents and other IP are individual property rights, typically assigned by inventors to their employers,[9] whereas in China, IP is considered a government asset, and any IP acquired by Chinese firms such as Foxconn may be treated as the property of the state, not the

---

[9] 35 U.S.C. §§ 101–103; see also *Stanford v. Roche*, 563 U.S. 776 (2011).

*Corrected*

individual or corporate owner.[10] Upholding the ITC's decision

would, therefore, not only reward unconscionable contractual

provisions but also expose U.S. innovators to systemic risks of

compelled IP transfer under foreign legal and governmental

regimes.

## III. Preview of DoD's March 2026 Report on Cognitive Warfare and Narrative Intelligence

The FY26 NDAA directs DoD to submit a report by March 31,

2026, defining cognitive warfare (aligning with doctrines like

information warfare and psychological operations), assessing

responsible DoD organizations, and evaluating narrative intelligence's

value in enhancing operations.[11] This case previews key content:

Cognitive warfare should encompass "informatized" and

"intelligentized" operations, including economic aggression like IP

coercion in contracts, as extensions of China's "cognitive domain

---

[10] Michael Brown & Pavneet Singh, *China's Technology Transfer Strategy: How Chinese Investments in Emerging Technologies Enable Access to the Crown Jewels of U.S. Innovation*, Defense Innovation Unit Experimental (2008) at p. 16.

[11] S. Rept. 119-39 - National Defense Authorization Act for Fiscal Year 2026, Sec. 1084—Report on defense workforce integration, Narrative intelligence and cognitive warfare (pp. 200-201).

*Corrected*

operations." Narrative intelligence—intelligence on an adversary's story—could analyze China's "rejuvenation" narrative justifying tech theft, informing countermeasures like free trade agreement tools to preempt IP narratives.

The ruling by this court will be relied upon by other parts of the US government including the DoD to execute their missions. If the court rules in favor of the ITC it will be endorsing the use of backdoors in legal agreements and in a case that favors an AI data center vendor tied to China. This will make the management of the supply chain much more challenging for the DoD.

*Corrected*

# CONCLUSION

For reasons set forth above, *amicus curie* urges support for the relief sought by Vicor Corporation.

Dated:  August 25, 2025

Respectfully submitted, /s/

Dr. Bowman Heiden
1600 Shattuck Avenue #114
Berkeley, CA 94709
Telephone: 650-931-5501
Email: boheiden@gmail.com

Suzanne Harrison
24 19th Avenue
San Francisco, CA 94121
Telephone:  415-509-4469
Email: suzanne@percipience-ip.com

*Corrected*

# CERTIFICATE OF COMPLIANCE

Case No. 25-1616

*Vicor Corporation v. International Trade Commission*

The foregoing brief complies with the type-volume limitation of Federal Circuit Rule 29(b), and the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6), because it has been prepared with a proportionally-spaced typeface using Century Schoolbook 14-point type and includes 1,674 words.

Dated: August 25, 2025

Dr. Bowman Heiden

*Corrected*

# CERTIFICATE OF SERVICE

I certify that on August 25, 2025, I caused the foregoing to be filed in paper form with the Clerk of Court and that I've emailed copies to counsel to the parties.

Respectfully submitted,

Dr. Bowman Heiden

*Unrepresented Party as Amicus Curiae*

This package is made from post-consumer waste. **Please recycle – again.**

# PRIORITY
## MAIL
# EXPRESS®

**POSTAGE PAID**
PME
SAN FRANCISCO, CA 94121
OCT 03, 2025



UNITED STATES
POSTAL SERVICE

20439

**$31.40**

RDC 07

S2324D501810-08

## FLAT RATE
## ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP


PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

recycle.info
PAPER
POUCH


UNITED STATES
POSTAL SERVICE®

---

**UNITED STATES POSTAL SERVICE®**  |  **PRIORITY MAIL EXPRESS®**



**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 415 ) 509-4469

Suzanne Harrison
2419th Avenue
San Francisco, CA 94121

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

Jarrett Perlow
US Court of Appeals for Fed. Circuit
717 Madison Place
Washington DC

ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 - ___ - ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

 PEEL FROM THIS CORNER

LABEL 11-B, NOVEMBER 2023   PSN 7690-02-000-9996

---


ER 182 817 961 US

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code: 94121
Scheduled Delivery Date (MM/DD/YY): 10/6/25
Postage: $31.40

Date Accepted (MM/DD/YY): 10/03/25
Scheduled Delivery Time ☐ AM ☐ PM
Insurance Fee: $
COD Fee: $

Time Accepted: 237 ☐ AM ☐ PM
Return Receipt Fee: $
Live Animal Transportation Fee: $

Special Handling/Fragile: $
Sunday/Holiday Premium Fee: $
Total Postage & Fees: $

Weight: 4.7 lbs. oz.
☐ Flat Rate
Acceptance Employee Initials: TP
31.40

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023; All rights reserved.